# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DAVID C. MYERS,**
      **Plaintiff,**

    v.                                    Case No. 10-CV-01126

**J. BURDICK,**
      **Defendant.**

## DECISION AND ORDER

In this action brought under 42 U.S.C. § 1983, I allowed pro se plaintiff David Myers to proceed against Defendant Officer J. Burdick on a free exercise claim under the First Amendment, an equal protection claim under the Fourteenth Amendment, and a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. All of these claims relate to the denial of the tarot and companion book that plaintiff sincerely believes are necessary to practice his religion. Now before me is defendant's motion for summary judgment.

## I. BACKGROUND

At the time he initiated this lawsuit, plaintiff was an inmate at Oshkosh Correctional Institution ("Oshkosh"), an adult institution run by the Wisconsin Department of Corrections ("DOC").[1] Plaintiff is an initiate into the Hermetic Order of the Golden Dawn ("Golden

---

[1] The facts are taken from defendant's proposed findings of fact, as well as plaintiff's sworn motion for summary judgment and sworn complaint. See Ford v. Wilson, 90 F.3d 245, 246–47 (7th Cir. 1996).

Dawn"), which Oshkosh recognizes as a legitimate faith. Plaintiff has been a practicing believer in the Golden Dawn for twenty-three years, and his religious beliefs are sincere.

Believers in the Golden Dawn use the Golden Dawn Enochian Skrying Tarot ("Golden Dawn Tarot"). The Golden Dawn Tarot was designed by Chic and Sandra Tabatha Cicero, who are senior adepts of the Hermetic Order of the Golden Dawn, as a tool for believers in the Golden Dawn to practice their faith. The Ciceros are also the authors of a companion book. The Golden Dawn Tarot contains information not found in any other tarot. Some of the unique features of the Golden Dawn Tarot include symbolism of the Enochian Square, representing elemental, astrological, geometrical, and alchemical, and Hebrew letter correspondences, which are key components of plaintiff's religious practice.

The DOC has a Religious Practices Advisory Committee ("RPAC") that reviews and revises DOC religious policies and procedures and resolves any religious issues that arise within the DOC in a way that promotes consistency and fairness amongst the various religious faiths. RPAC is comprised of DOC administrators, chaplains and security staff. Community religious leaders also take an active role in the establishment of allowable property. There is a chart of allowable religious property that is periodically updated.

In September 2009, the religious property chart was revised, and inmates who chose Pagan as their religious preference were allowed to have one deck of tarot cards as their religious property for their personal use. Tarot card decks are generally comprised of 78 cards, each of which has a picture or image on it. They are most commonly used for divination purposes. The only tarot cards allowed to be possessed by inmates for their personal use were the Aquarian Tarot deck by David Palladini, published by U.S. Game

Systems, Inc. The DOC chose not to allow any other versions of tarot cards, and the Aquarian Tarot had to be used for in-cell, personal use only.

RPAC used extreme caution in choosing the type of tarot cards that it would allow. There are many, perhaps thousands, of tarot card decks available to the public, based on diverse interests and beliefs. RPAC sought to find a tarot that did not include cards with codes, symbols or colors, and did not contain any type of pornography or nudity. The use of symbols or codes to communicate is prohibited in correctional institutions because the content cannot easily be reviewed by security staff to determine if a security concern exists, such as gang communications, an escape plan, inciting a riot, group resistance, or a plan to engage in injurious behavior toward self, another inmate, or staff. The cards in the Aquarian tarot approved by RPAC have a defined meaning and are not a way for inmates to write or communicate outside of the cards' meaning.

RPAC also sought to avoid cards that contained any type of pornography or nudity. In the search conducted by RPAC, it was discovered that there were many tarot cards that featured depictions of nudity, sexuality, eroticism, and macabre artistry. All DOC institutions prohibit inmates from personally possessing pornographic materials. Pornography includes depictions of human sexual behavior, sadomasochistic abuse, including flagellation, bondage, brutality to or physical torture of a human being, unnatural preoccupation with human excretion, and nudity which lacks serious literary, artistic, political, educational, or scientific value. RPAC also restricted use of tarot cards to a prisoner's cell because tarot card decks tend to encourage fortune telling, and this activity poses a danger that weaker-minded inmates will be manipulated by inmates who place themselves in positions of power.

3

Inmates can request that new items be added to the approved religious property chart by submitting a DOC-2075 form to the chaplain or chaplain designee. The chaplain is then required to forward the DOC-2075 form along with their recommendation to their supervisor for review and the supervisor's recommendation. The DOC-2075 form is then forwarded with both recommendations to the RPAC Executive Committee who reviews the form and any supporting documentation and consults with other staff and community spiritual leaders as needed. The RPAC Executive Committee then makes a recommendation to the warden or warden's designee and returns the DOC-2075 form to the institution for a final decision. Inmates can appeal the warden's final decision through the Inmate Complaint Review System.

On June 23, 2009, plaintiff submitted a DOC-2075 form requesting that he be allowed to possess a Golden Dawn Tarot deck. The DOC-2075 form located in the records at Oshkosh contains a recommendation from Chaplain Jamyi Witch, her supervisor, and the Division of Adult Institutions Central Office ("Central Office"). The chaplain recommended that plaintiff's request be denied because there are many forms of divination and the available Aquarian Tarot is comparable to the tarot plaintiff requested. Her supervisor relied on that analysis and added that plaintiff did not present a compelling reason why the allowed tarot deck was inadequate. An RPAC member also recommended denial and wrote: "Tarot deck the inmate requests is not approved and contains images of nudity including children."[2] (Aff. of Dawn Fofana, Ex. 1008, ECF No. 38.) A copy of Warden Smith's final decision cannot be located, but she recalls that it was her decision

---

[2] My review of the Golden Dawn Tarot revealed that there is no child nudity on any of the cards. So, it is unclear what this comment is referencing.

4

to deny plaintiff's request. If the warden had approved plaintiff's request, documentation would have been sent to the Central Office notifying them of the approval. The Central Office has no documentation that plaintiff's request was ever approved.

On February 19, 2010, plaintiff again attempted to obtain the Golden Dawn Tarot as well the companion book. Defendant, a correctional officer at Oshkosh, denied the request the same day because the tarot was not the Aquarian Tarot that is approved by the DOC. As a correctional officer, defendant did not have any authority to deviate from the policies and procedures regarding religious property.

In support of her motion for summary judgment, defendant presents an affidavit from the Oshkosh Security Threat Group Coordinator, Rebecca R. Blodgett, regarding her review of the Golden Dawn Tarot. Blodgett found that the deck included eighty-nine cards that have pictures on the front and back of each card. She averred that the cards contained gang colors and gang symbols and concluded that the Golden Dawn Tarot could be used by inmates to further gang activities. She also found nine cards that are illustrated with nudity, including exposed female breasts and male frontal nudity.

## II. DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

5

**A. Individual Capacity Claims**

First, I find defendant is entitled to summary judgment on plaintiff's claims against defendant in her individual capacity. Defendant did not have any discretion to deviate from the religious property policy. Therefore, she was not personally involved in any deprivation of plaintiff's constitutional rights under either the First or Fourteenth Amendment. RLUIPA also does not allow suits against prison officials in their individual capacity. See Nelson v. Miller, 570 F.3d 868, 886–89 (7th Cir. 2009).

**B. Free Exercise Claim**

Next, I consider plaintiff's free exercise claim against defendant in her official capacity challenging the policy that resulted in the denial of the tarot cards.[3] Defendant is entitled to summary judgment on this claim if the policy regarding the tarot cards was "reasonably related to a legitimate penological interest." See Alston v. DeBruyn, 13 F.3d 1036, 1039 (7th Cir. 1994) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). "[L]imitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). To determine whether a rule is reasonable in light of penological objectives, courts should consider: "1. whether a valid, rational connection exists between the regulation and a legitimate government interest behind the rule; 2. whether there are alternative means of exercising the right in question that remain available to prisoners; 3. the impact

---

[3] Even though plaintiff has now been transferred to another DOC institution, his official-capacity claims are not moot. The religious property chart and other religious policies are DOC-wide procedures.

6

accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and 4. although the regulation need not satisfy a least restrictive alternative test, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable." Al-Alamin v. Gramley, 926 F.2d 680, 685 (7th Cir. 1991) (internal quotation marks omitted, quoting Williams v. Lane, 851 F.2d 867, 877 (7th Cir. 1988)).

A standard of reasonableness, rather than heightened scrutiny, applies to free exercise claims in the prison context in order to permit prison administrators "'to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration[,]' and thereby prevent unnecessary federal court involvement in the administration of prisons." Al-Alamin, 926 F.2d at 685 (quoting Turner v. Safley, 482 U.S. at 89). Therefore, I must accord "substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." Overton v. Bazzetta, 539 U.S. 126, 132 (2003). "The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." Id.

In this case, defendants have presented ample evidence of their security concerns for me to find that the restriction on tarot cards is reasonably related to institutional security. Defendant has also presented evidence that, due to budget cuts and staff shortages, it would be a significant burden to review and approve individual tarot decks requested by prisoners other than the tarot already approved by RPAC. Therefore, even viewing the evidence in the light most favorable to plaintiff, defendant is entitled to summary judgment on plaintiff's free exercise claim.

7

**C. Equal Protection Claim**

Next, I consider plaintiff's claim against defendant in her official capacity challenging the policy regarding tarot cards under the Equal Protection Clause. The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws," U.S. Const. amend. XIV, which means that all persons similarly situated should be treated alike. Vision Church v. Village of Long Grove, 468 F.3d 975, 1000 (7th Cir. 2006). Heightened scrutiny is appropriate "when government action interferes with a person's fundamental rights, such as freedom of speech or religion." Id. However, in a case like this one where a plaintiff's First Amendment free exercise claim has failed, only rational basis scrutiny applies to an equal protection claim based on the same facts. St. John's United Church of Christ v. City of Chicago, 502 F.3d 616, 638 (7th Cir. 2007) (quoting Wirzburger v. Galvin, 412 F.3d 271, 282–83 (1st Cir. 2005)). Although free exercise of religion is unquestionably a fundamental constitutional right, there is no reason to apply a heightened standard of scrutiny to review a defendant's action that has already been found not to violate that right. Johnson v. Robison, 415 U.S. 361, 375 n.14 (1974).

I conclude the DOC's policy regarding tarot cards is rationally related to a legitimate government interest. Even though the policy results in practitioners of different faiths being treated differently, the DOC's security and safety concerns, as well as the reality of budget cuts and staff shortages, are rational, neutral reasons for there to be only one approved tarot. Therefore, I will grant defendant's motion for summary judgment on this claim.

8

## C. RLUIPA Claim

RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in [§ 2 of the Civil Rights of Institutionalized Persons Act, 42 U.S.C. 1997], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). To establish a claim under RLUIPA, a prisoner must show that a prison receiving federal funds has enacted a regulation that renders his exercise of a religious practice effectively impracticable. See 42 U.S.C. § 2000cc-1; Koger v. Bryan, 523 F.3d 789, 799 (7th Cir. 2008). If the inmate succeeds, the burden shifts to prison officials to demonstrate that the regulation is the least restrictive means of furthering a compelling governmental interest. See 42 U.S.C. §§ 2000cc-1(a); Koger, 523 F.3d at 796. A prison has a compelling interest in maintaining security, see Borzych v. Frank, 439 F.3d 388, 391 (7th Cir. 2006), and courts must give due deference to the judgment and expertise of prison administrators when analyzing whether a regulation is necessary to further that interest. See Cutter v. Wilkinson, 544 U.S. 709, 723 (2005); Koger, 523 F.3d at 800.

Plaintiff has established that he has a sincerely held religious belief that he needs the Golden Dawn Tarot and companion book to practice his faith, and that the Aquarian Tarot is not an adequate substitute for the Golden Dawn Tarot. Thus, I find the complete

9

denial of these religious items constitutes a substantial burden on plaintiff's religious practice that renders it effectively impracticable. To assess the impact of the denial of the tarot cards on plaintiff's overall practice of his faith, as defendants urge, is to evaluate the centrality of a religious practice, and RLUIPA specifically precludes such an analysis. See 42 U.S.C. § 2000cc-5(7)(A); see also Cutter, 544 U.S. at 725 n. 13. Because I find plaintiff has shown that his sincerely held religious beliefs have been substantially burdened, the burden of persuasion shifts to defendant to come forward with evidence demonstrating that the challenged practice furthers a "compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a).

Defendant argues that the limitation to one approved tarot for all pagan religious is the least restrictive means of furthering the compelling governmental interests of security and rehabilitation. She points to the DOC's concerns with secret communication among gang members and other prisoners, concerns with allowing materials that contain nudity, and concerns that prisoners will engage in fortune telling. Even if tarot cards are limited to individual in-cell use, defendant argues they could be hidden in clothing, hair, or other property, or "fished" from cell to cell.

Despite the evidence presented by defendant, there remain genuine issues of material fact as to whether an outright ban on all tarot cards other than the Aquarian Tarot is the least restrictive means of furthering the governmental interests in prison security and rehabilitation. First, a reasonable factfinder could find that the DOC's concern with secret communication has been overstated. The concern with secret communication by symbols is not limited to the Golden Dawn Tarot. Similar images or messages to those presented on the Golden Dawn Tarot could be drawn and passed on similarly sized pieces of paper

10

even if plaintiff is denied access to the cards. Second, the colors shown on the cards that are used by gangs are not banned generally in the prison, and a factfinder could find that restricting the cards to in-cell use could address the concern with gang activity. A similar argument could be made in response to the concern about fortune telling.

Finally, a factfinder could conclude that the limited and non-graphic nudity on only nine out of eighty-nine cards is not a risk to security or safety in the prison. There are eight cards that include a figure with female breasts. On two of the cards, the two that have female heads, the breasts are covered in what seem to be feathers. The six cards that have figures with bare breasts all have animal heads, which makes them look more like mythological creatures than sexual symbols. The one card showing a completely naked male is a simple line drawing with the outline of penis included, but no graphic depiction of male genitalia. Defendant's own definition of pornography includes only "nudity which lacks serious literary, artistic, political, educational, or scientific value." Although religious value is not on that list, religious materials like these might fall into one of the listed categories.

For the foregoing reasons, viewing the evidence in the light most favorable to the plaintiff, I find that a factfinder could conclude that a total denial of all tarot cards other than the Aquarian Tarot and specifically the denial of the Golden Dawn Tarot and its companion book, was not the least restrictive means of furthering a compelling governmental interest. Accordingly, plaintiff's official capacity RLUIPA claim against defendant can proceed.

**THEREFORE, IT IS ORDERED** that defendants' motion for summary judgment [DOCKET #35] is **GRANTED IN PART** and **DENIED IN PART**.

11

Dated at Milwaukee, Wisconsin, this 24th day of September 2012.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge